# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| CHARLES EDWARD BRITTENHAM, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) Case No. CIV-11-148-JHP-SPS ) |
| MICHAEL J. ASTRUE, Commissioner of the Social Security Administration, | ) ) ) ) ) |
| Defendant. | ) |

## REPORT AND RECOMMENDATION

The claimant Charles Edward Brittenham requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). He appeals the Commissioner's decision and asserts the Administrative Law Judge ("ALJ") erred in determining he was not disabled. For the reasons set forth below, the Commissioner's decision n should be REVERSED and the case REMANDED to the ALJ for further proceedings.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his

age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" *Id*. § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997). Substantial evidence is "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). *See also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The Court may not reweigh the evidence or substitute its discretion for the Commissioner's. *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991). But the Court must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in the record fairly detracts

---

[1] Step One requires the claimant to establish that he is not engaged in substantial gainful activity. Step Two requires the claimant to establish that he has a medically severe impairment (or combination of impairments) that significantly limits his ability to do basic work activities. If the claimant *is* engaged in substantial gainful activity, or his impairment *is not* medically severe, disability benefits are denied. If he *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. If the claimant has a listed (or "medically equivalent") impairment, he is regarded as disabled and awarded benefits without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must show that he lacks the residual functional capacity ("RFC") to return to his past relevant work. At step five, the burden shifts to the Commissioner to show there is significant work in the national economy that the claimant *can* perform, given his age, education, work experience, and RFC. Disability benefits are denied if the claimant can return to any of his past relevant work or if his RFC does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951). *See also Casias*, 933 F.2d at 800-01.

## Claimant's Background

The claimant was born July 31, 1948, and was sixty years old at the time of the administrative hearing. (Tr. 27, 124). He completed the twelfth grade and has worked as a maintenance worker and a bus driver. (Tr. 60, 143). The claimant alleges that he has been unable to work since January 1, 2007 due to post-traumatic stress disorder (PTSD) and hearing loss. (Tr. 139).

## Procedural History

On January 7, 2008, the claimant applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434. (Tr. 124-126). His application was denied. ALJ John W. Belcher conducted an administrative hearing and determined that the claimant was not disabled in a written opinion dated September 25, 2009. (Tr. 11-23). The Appeals Council denied review, so the ALJ's written opinion is the Commissioner's final decision for purposes of this appeal. *See* 20 C.F.R. § 404.981.

## Decision of the Administrative Law Judge

The ALJ made his decision at steps four and five of the sequential evaluation. He found that the claimant had the residual functional capacity ("RFC") to perform medium work, as defined in 20 C.F.R. § 404.1567(c), *i. e.*, he could lift/carry fifty pounds occasionally and twenty-five pounds frequently, stand/walk eight hours in an eight-hour workday, and sit eight hours of an eight-hour workday. Additionally, the ALJ found that the claimant could only occasionally climb ladders, ropes, and scaffolding, or reach about

the head bilaterally, he could tolerate no loud background noise, could do moderately complex and detailed work, and have only superficial contact with co-workers and supervisors and limited general public interaction with no intense interpersonal contact. (Tr. 19). The ALJ thus concluded that the claimant could return to his past relevant work as a maintenance worker, or alternatively that he was not disabled because there was work he could do in the national and regional economies, *e. g.*, stock clerk, janitor, and production laborer. (Tr. 23).

**Review**

The claimant contends that the ALJ erred by (i) failing to properly evaluate the medical opinions of his treating physician, Dr. Yuriy Vinokur; (ii) failing to properly assess his credibility; and (iii) failing to include *all* of his impairments in the hypotheticals proposed to the vocational expert ("VE"). The undersigned Magistrate Judge finds that the ALJ *did* fail to properly evaluate Dr. Vinokur's opinion, and the decision of the Commissioner should therefore be reversed.

The record reveals that the claimant's severe impairments included anxiety disorder, depression, substance abuse, and bursitis in both shoulders. (Tr. 16). The claimant was treated by Dr. Vinokur at the VA hospital in Muskogee, Oklahoma. On May 14, 2007, the claimant presented to Dr. Vinokur with complaints of bilateral shoulder pain that was reportedly worse with lifting and mechanical work. At that time, the shoulders had full range of motion, but were tender in the anterior acromial point and in the forcefull. Dr. Vinokur administered steroid injections to both shoulders. (Tr. 219-223). On December 4, 2007, Dr. Vinokur performed steroid injections on both

claimant's shoulders and the claimant reported improvement. (Tr. 195-196). Dr. Vinokur treated the claimant's shoulder pain with steroid injections again on June 12, 2008. (Tr. 311-315). The claimant again sought injections for his shoulders on December 17, 2008, complaining that the pain was "all the time." (Tr. 403). He reported that the last injection helped for two weeks, then the pain reverted to his baseline, and Dr. Vinokur noted that the claimant exhibited severe pain to palpation over the medial line of the AC joint, as well as decreased range of motion and decreased strength. (Tr. 406, 408). The claimant also had his shoulder evaluated in February 2009, by Dr. Timothy Gilcrest. Dr. Gilcrest noted that the claimant's right shoulder was worse than his left, that x-rays showed bone on bone osteoarthritis in both shoulders, but to a lesser degree in the left shoulder. (Tr. 419-420). Dr. Gilcrest provided injections which relieved the claimant's pain, but advised the claimant that they would be "hit-or-miss" as to whether they would be beneficial, and discussed a right shoulder replacement with the claimant. (Tr. 420). Dr. Gilcrest provided another injection on May 13, 2009, and again advised the claimant that he would need a right shoulder replacement. (Tr. 422). The claimant requested and received injections again on October 13, 2009, but presented back to Dr. Gilcrest on November 18, 2009 due to pain. Further x-rays revealed complete collapse of the joint space and bone-on-bone on the right shoulder, with inferior lipping on the left shoulder with remaining joint space. (Tr. 428). Dr. Gilcrest referred the claimant for a total shoulder arthroplasty, and the claimant underwent surgery on May 4, 2010. (Tr. 428, 431).

Dr. Vinokur completed a physical medical source statement in September 2008.

He stated that the claimant could sit/stand/walk eight hours in an eight-hour workday and that he could frequently lift 11-20 pounds and occasionally lift 21-25 pounds. (Tr. 423). Dr. Vinokur opined that the claimant could only occasionally carry 26-60 pounds and that he was limited in use of hands and feet for repetitive movements of pushing and pulling leg controls and grasping, but not limited in fingering. (Tr. 424). Additionally, Dr. Vinokur stated that the claimant could continuously bend, squat, crawl, and climb, but only occasionally reach. (Tr. 424). Last, Dr. Vinokur found that the claimant had mild restrictions around unprotected heights and moving machinery, moderate restrictions as to driving, and marked restrictions as to marked changes in temperature and humidity; exposure to dust, fumes, and gases; vibrations; and other. (Tr. 425). Dr. Vinokur based these restrictions on the claimant's limited arms lifting and x-ray results. (Tr. 425). On February 26, 2008, state consultative examiner Dr. Seth Nodine assessed the claimant with, *inter alia*, bilateral foot pain with bunions and lateral deviation of the toes, bilateral shoulder pain with a normal range of motion, PTSD, and hearing loss but not wearing his hearing aids. (Tr. 263-265).

The medical records also indicate that the VA awarded the claimant a 60% service-connected disability in 2003, with 50% attributed to the claimant's PTSD. (Tr. 208-209). The records indicate that the claimant struggled with sleeping, including nightmares and sleepwalking, as well as anger problems. (*e. g.*, Tr. 199, 208-209, 214). Dr. Theresa Horton performed a consultative mental examination of the claimant, concluding that the claimant "likely has significant problems with adjustment and adaptation into occupational and social settings partly related to his hearing loss.

Additionally, he has a rather shy persona and likely avoids contact that is uncomfortable and has experienced an increase in his experience of anxiety and depression with stress." (Tr. 273). Dr. Horton nevertheless continued, stating, "He does appear capable of understanding simple and complex instructions and tasks, and likely manages simple ones well. He likely has more difficulty with the management of the more complex issues as he has experienced a loss of motivation and initiative related to depression and has had increasing problems with frustration and stress." (Tr. 273).

Medical opinions from a treating physician are entitled to controlling weight if they are "well-supported by medically acceptable clinical and laboratory diagnostic techniques . . . [and] consistent with other substantial evidence in the record." *Langley v. Barnhart*, 373 F.3d 1116, 1119 (10th Cir. 2004), *quoting Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003). When a treating physician's opinions are not entitled to controlling weight, the ALJ must determine the proper weight to which they are entitled by analyzing all of the factors set forth in 20 C.F.R. § 404.1527. *See Langley*, 373 F.3d at 1119 ("Even if a treating physician's opinion is not entitled to controlling weight, '[t]reating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in [§] 404.1527.'"), *quoting Watkins*, 350 F.3d at 1300. The pertinent factors are: (i) the length of the treatment relationship and the frequency of examination; (ii) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (iii) the degree to which the physician's opinion is supported by relevant evidence; (iv) consistency between the opinion and the record as a whole; (v) whether or not the physician is a

specialist in the area upon which an opinion is rendered; and (vi) other factors brought to the ALJ's attention which tend to support or contradict the opinion. *Watkins*, 350 F.3d at 1300-01 [quotations marks omitted], *citing Drapeau v. Massanari*, 255 F.3d 1211, 1213 (10th Cir. 2001). If the ALJ decides to reject a treating physician's opinion entirely, "he must . . . give specific, legitimate reasons for doing so[,]" *id.* at 1301 [quotation marks omitted; citation omitted], so it is "clear to any subsequent reviewers the weight [he] gave to the treating source's medical opinion and the reasons for that weight," *id.* at 1300 [quotation omitted].

The ALJ summarized the claimant's hearing testimony as well as some of the records from 2006 to 2008. The ALJ noted the claimant's complaints of shoulder pain with full range of motion and limited abduction, and discussed the claimant's PTSD history as well. The ALJ further described Dr. Vinokur's physical source statement as finding the claimant could do medium and light exertional work, then concluded that the claimant's symptoms were "disproportionate in comparison to the usual expected severity of his condition." (Tr. 21). Further, the ALJ stated that the claimant's descriptions as to his symptoms and limitations "has generally been inconsistent and unpersuasive and the claimant has not provided convincing details regarding factors that precipitate the allegedly disabling symptoms." (Tr. 21). The ALJ noted the claimant's VA disability rating, but gave it little weight because it was a non-binding determination in this proceeding. (Tr. 21).

The ALJ was required to evaluate for controlling weight any opinions as to the claimant's functional limitations expressed by his treating physicians. Dr. Vinokur

expressed such an opinion in his medical source statement (as well as in statements dating two years previously), but the ALJ provided no assessment—aside from a (inaccurate) recitation that the claimant could do both medium and light exertional work with the limitations of grasping, reaching, driving, and exposure to marked changes in temperature and humidity, dust, fumes, and gases. (Tr. 21). The ALJ thus entirely failed to evaluate Dr. Vinokur's opinion for controlling weight according to the *Watkins* factors, and further left it unclear to the reviewer the weight given to Dr. Vinokur's opinion and the reasons for that weight. The ALJ thus failed to perform the proper analysis here.

The claimant's contention that the ALJ failed to properly evaluate all the medical evidence is bolstered by evidence submitted to the Appeals Council after the hearing, which included the additional evidence of the claimant's continued complaints of shoulder pain to Dr. Gilcrest, as well as his eventual right shoulder replacement. The Appeals Council was required to consider this evidence if it is: (i) new; (ii) material; and, (iii) "related to the period on or before the date of the ALJ's decision." *Chambers v. Barnhart*, 389 F.3d 1139, 1142 (10th Cir. 2004), *quoting Box v. Shalala*, 52 F.3d 168, 171 (8th Cir. 1995).

First, the 2009-2010 evidence is new if it "is not duplicative or cumulative." *Threet v. Barnhart*, 353 F.3d 1185, 1191 (10th Cir. 2003), *quoting Wilkins v. Sec'y, Dep't of Health & Human Svcs.*, 953 F.2d 93, 96 (4th Cir. 1991). Although the parties do not address whether the evidence submitted by the claimant after the hearing qualifies as new evidence, the Appeals Council *did* consider it (Tr. 6), and the Court therefore has no difficulty concluding that it does qualify. *Chambers*, 389 F.3d at 1142 ("If the evidence

does qualify and the Appeals Council considered it in connection with the claimant's request for administrative review (regardless of whether review was ultimately denied), it becomes part of the record . . . assess[ed] in evaluating the Commissioner's denial of benefits under the substantial-evidence standard."). The report was not duplicative or cumulative, and reasonably calls into question the disposition of the case because the ALJ relied in part on a perceived inconsistency between the claimant's complaints of pain and his symptoms. *See Threet v. Barnhart*, 353 F.3d at 1191, *quoting Wilkins v. Sec'y, Dep't of Health & Human Svcs.*, 953 F.2d at 96; *Lawson v. Chater*, 1996 WL 195124, at *2 (10th Cir. April 23, 1996). Additionally, the evidence pertains to the time "period on or before the date of the ALJ's Decision," because it discussed the *continuation* of the claimant's shoulder pain. *Kesner v. Barnhart*, 470 F. Supp. 2d 1315, 1320 (D. Utah 2006), *citing* 20 C.F.R. § 404.970(b). Thus, the ALJ had no opportunity to perform a proper analysis of the newly-submitted evidence in accordance with the authorities cited above.

Accordingly, the Commissioner's decision should be reversed and the case should be remanded to the ALJ for further analysis of the opinions of the claimant's treating physician. On remand, the ALJ should properly analyze *all* of the evidence, re-determine whether the claimant has any severe impairments, and if so, determine his RFC based on *all* impairments—severe *and* non-severe—and the work he can perform (if any) and ultimately whether he is disabled.

**Conclusion**

The undersigned Magistrate Judge hereby PROPOSES a finding by the Court that correct legal standards were not applied by the ALJ, and the Commissioner's decision is therefore not supported by substantial evidence. The undersigned Magistrate Judge thus RECOMMENDS that the Court reverse the decision of the Commissioner and remand the case for further proceedings. Any objections to this Report and Recommendation must be filed within fourteen days. *See* Fed. R. Civ. P. 72(b).

**DATED** this 10th day of September, 2012.

Steven P. Shreder
United States Magistrate Judge
Eastern District of Oklahoma